# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| JANE ROE; PRESCHOOLER II, | ) | Case No.: 2:04-cv-00348-RLH-PAL |
| | ) | |
| Plaintiffs, | ) | **O R D E R** |
| | ) | |
| vs. | ) | (Motions in Limine–##105, 107, 109; |
| | ) | Motion for Judgment on the Record–#106; |
| THE STATE OF NEVADA; STATE OF | ) | Motions for Summary Judgment–##108, |
| NEVADA DEPARTMENT OF EDUCATION; | ) | 110, 111, 112, 113) |
| KEITH RHEAULT; CLARK COUNTY | ) | |
| SCHOOL BOARD OF TRUSTEES; CLARK | ) | |
| COUNTY SCHOOL DISTRICT; CARLOS | ) | |
| ARTURO GARCIA; CHARLENE A. GREEN; | ) | |
| MICHAEL S. HARLEY; KAY DAVIS; | ) | |
| DARRYL WYATT; KATHLEEN LISANTI, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendants Clark County Board of Education, Clark County School District, Carlos Arturo Garcia, Charlene A. Green, Michael S. Harley, Kay Davis, Darryl Wyatt, and Kathleen Lisanti's **Motion in Limine to Exclude Expert Testimony of Stanton Smith** (#105), filed July 19, 2007.  The Court has also considered Plaintiff Jane Roe and Preschooler II's Opposition (#115), filed under seal on August 6, 2007, and Defendants' Reply (#125, sealed exhibits #126), filed August 15, 2007.

/ /

1

1          Also before the Court are Defendants' **Motion for Judgment on the Record on**

2   **Plaintiffs' First Claim for Relief** (#106), **Motion in Limine to Exclude Testimony of Dr.**

3   **Stephen Luce** (#107), **Motion for Summary Judgment on Plaintiffs' Sixth and Seventh**

4   **Claims for Relief** (#108), **Motion in Limine to Preclude the Testimony of Certain Witnesses**

5   **Disclosed by Plaintiffs** (#109), **Motion for Summary Judgment on Plaintiffs' Fourth Cause of**

6   **Action** (#110), **Motion for Summary Judgment on Plaintiffs' Eighth Cause of Action** (#111),

7   **Motion for Summary Judgment as to Plaintiffs' Entitlement to Compensatory Damages**

8   **under Plaintiffs' Second and Third Claims for Relief** (#112, Errata #114), and **Motion for**

9   **Summary Judgment on Plaintiffs' Fourth and Fifth Claims for Relief** (#113), all filed July 23,

10  2007.

11         The Court has also considered Plaintiffs' corresponding Oppositions (#121, Errata

12  #148; #116; #117; #124; #120; #118; #119; #123), filed under seal on August 10, 2007, and

13  Defendants' respective Replies (#132, sealed exhibits #133, #136; #129; #137, sealed exhibits

14  #138; #130; #134, sealed exhibits #135; #141, sealed exhibits #142; #139, sealed exhibits #140;

15  #143, sealed exhibits #144), filed August 24, 2007.

16         The Court has also considered Plaintiffs' **Statement of Material Facts** (#122,

17  Errata #147), filed under seal on August 10, 2007, and Defendants' Response to Plaintiffs'

18  Statement of Material Facts (#145, sealed exhibits #146), filed August 24, 2007.

19                         **BACKGROUND**

20         This case involves allegations that a special education teacher at the Betsy Rhodes

21  Elementary School ("Rhodes Elementary") verbally and physically abused a four-year-old autistic

22  child, anonymously named Preschooler II ("Preschooler"), during the 2002–2003 school year.

23  Plaintiff Jane Roe brings the current action on behalf of herself and Preschooler.

24  **I. Factual Background**

25         Due to his autism and other conditions, Preschooler is eligible for special education

26  services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et

AO 72
(Rev. 8/82)

1    seq., including free appropriate public education ("FAPE") to address his special needs.

2    Appropriate education under this statute includes an individualized education program ("IEP") for

3    the child.  To effectuate the IEP, Defendant Clark County School District ("School District")

4    convened a meeting regarding Preschooler on March 21, 2002.  Two additional meetings were

5    held during the 2002–2003 school year.  Roe was present at all meetings.

6           The IEP designed for Preschooler consisted of both a school and a home

7    component.  The school component consisted of full-time placement in a special education pre-

8    school program known as Kids Intensive Delivery of Services ("KIDS").  The classroom was

9    staffed by one teacher, Defendant LiSanti, and various teacher's aides.  The home component

10   consisted of twenty hours per week of intensive one-on-one, in-home instruction to be carried out

11   by representatives from the Lovaas Institute for Early Intervention ("LIFE"), a special education

12   home service provider approved by the School District.  Roe requested the hours of the home

13   component be increased but was denied this request.

14          Preschooler began his IEP's school component on August 29, 2002.  Shortly

15   thereafter on September 24, 2002, LiSanti suffered a heart attack and was thereafter absent until

16   October 17, 2002.  During her absence, various substitute teachers staffed the classroom.  The

17   home component began in January 2003.  That spring, Roe was contacted by principal Darryl

18   Wyatt ("Wyatt") regarding an investigation of LiSanti based on allegations of mistreatment of

19   Preschooler.  The allegations generally included slapping, hitting, and slamming Preschooler, as

20   well as force-feeding him and making him walk barefoot from the school bus to the classroom.

21   Preschooler was then removed to a different elementary school.

22   **II.  Procedural Background**

23          In addition to substantive guarantees, the IDEA contains certain procedural

24   safeguards.  In particular, it allows the child's parent to bring a complaint about any matter relating

25   to the identification, evaluation or educational placement of the child, or provision of FAPE.

26   When a complaint is made, the child's parents are entitled to an impartial due process hearing.  If

1    unsatisfied with the result of the hearing, the parents may appeal the results through a civil action

2    in state or federal court.  IDEA, 20 U.S.C. § 1415.

3            Following the allegations of mistreatment of Preschooler, Roe initiated a due

4    process hearing beginning June 17, 2003.  On October 10, 2003, the State Hearing Officer Ann

5    Padover ("Hearing Officer") issued a decision concluding that: (1) Preschooler was denied FAPE

6    during the time LiSanti was absent from the classroom because the substitutes failed to implement

7    Preschooler's IEP; (2) there was no need for a specific behavior plan for Preschooler; (3) the

8    denial of Roe's request for additional home instruction did not result in a denial of FAPE; and (4)

9    the evidence did not show that the mistreatment incidents interfered with Preschooler receiving

10    FAPE.  Roe appealed to the State Review Officer pursuant to IDEA.

11            State Review Officer Joyce Eckrem ("Review Officer") reviewed the record and

12    issued a decision on February 23, 2004, finding that: (1) the Hearing Officer properly excluded

13    evidence on the issue of whether the enforcement provisions of Nev. Rev. Stat. § 388.521 et seq.

14    (Use of Aversive Intervention, Physical Restraint and Mechanical Restraint on Pupils with

15    Disabilities) had been violated, as they are not standards of the state educational agency within the

16    meaning of IDEA; (2) sufficient evidence regarding the alleged incidents of mistreatment was

17    introduced to determine whether or not the alleged incidents resulted in a denial of FAPE; (3) the

18    IEP goals were measurable and did not result in denial of FAPE; (4) the Hearing Officer erred in

19    finding that there was no need for a specific behavior plan, and the lack of such a plan resulted in

20    infringement of the parents' right to participate in IEP and was therefore a denial of FAPE; and (5)

21    the Hearing Officer was correct in determining that a program providing Preschooler with thirty

22    hours of classroom education and twenty hours of at-home education was not a denial of FAPE.

23    The Review Officer also ordered data collection regarding certain maladaptive behaviors that

24    inhibited learning and, if the data collection warranted, an added thirty minutes of instruction per

25    week for Preschooler.

26    / /

AO 72
(Rev. 8/82)

1    Plaintiff thereafter filed the instant action to review the administrative decision and

2   assert additional causes of action.  The additional claims for relief include: violations of the

3   Americans with Disabilities Act and Rehabilitation Act; violations of Preschooler's Fourth and

4   Fourteenth Amendments brought under 42 U.S.C. § 1983; assault, battery and use of aversive

5   interventions; and negligence.  Plaintiffs seek to hold LiSanti, the School District, the Board of

6   Trustees, and other school officials liable for LiSanti's conduct.  Defendants filed many motions,

7   each of which are discussed below.

8    **DISCUSSION**

9   **I.  Motion for Judgment on the Administrative Record (#106)**

10    Defendants move for a judgment on the record on Plaintiffs' first cause of action:

11   Petition for De Novo Judicial Review; Declaratory and Equitable Relief; Attorneys' Fees.  On this

12   issue, the Parties dispute whether Plaintiffs should be allowed to supplement the administrative

13   record with additional evidence.  Plaintiffs argue that certain evidence was improperly excluded or

14   unavailable at the administrative hearing.  Defendants counter that the evidence is unjustified,

15   irrelevant, and cumulative, and that the administrative record is sufficient as is for the Court to

16   decide the merits of Plaintiffs' petition for judicial review.  As outlined herein, the Court allows

17   Plaintiffs to supplement the record.

18    Under the IDEA, on judicial review of an administrative decision, "the court shall

19   receive the records of the administrative proceedings, shall hear *additional* evidence at the request

20   of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as

21   the court determines is appropriate."  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th

22   Cir. 1993) (citing 20 U.S.C. § 1415(e)(2) (West 1990) (current version at 20 U.S.C. §

23   1415(i)(2)(C)) (emphasis added)).

24    The Ninth Circuit interprets "additional" to mean "supplemental."  *Id.* at 1472–73

25   (citing *Perrin v. United States*, 444 U.S. 37, 42 (1980)).  Reasons that a plaintiff may supplement a

26   record include "gaps in the administrative transcript owing to mechanical failure, unavailability of

AO 72
(Rev. 8/82)

1    a witness, an improper exclusion of evidence by the administrative agency, and evidence

2    concerning relevant events occurring subsequent to the administrative hearing." *Id.* at 1473.  A

3    party is not allowed to admit supplemental evidence merely to "repeat or embellish their prior

4    administrative hearing testimony," and the reviewing court must remain cautious not to "change

5    the character of the hearing from one of review to a trial *de novo*." *Id.*

6              Plaintiffs seek the introduction of a variety of evidence.  Prior to turning to the

7    merits, the Court addresses a preliminary matter.  In their Opposition, Plaintiffs oppose a phantom

8    argument that their request to supplement the record is untimely, even quoting page six of

9    Defendants' Motion.  Defendants never made such an argument and the Court therefore disregards

10   it.  *See* discussion *infra* Section V.

11             Turning to the merits, Plaintiffs first urge the Court to supplement the

12   administrative record with the testimony of Stuart Limbert ("Limbert"), one of Preschooler's

13   substitute teachers at Rhodes Elementary during LiSanti's absence.  Limbert was unavailable to

14   testify at the hearing.  Allegedly, Limbert witnessed an incident where a teacher's aide picked up

15   Preschooler and threw him.  To determine the credibility of this allegation, the Hearing Officer

16   weighed the testimony of four witnesses, two aides and two parents, ultimately believing the aides'

17   version of events in concluding that the incident did not occur.  Plaintiffs argue here that the

18   Hearing Officer discounted the parents' testimony due to a lack of corroborating evidence.

19   Plaintiffs quote the Hearing Officer as opining that "while the parents of the other child provided

20   credible testimony about the incident, once again none of these allegations were corroborated by

21   other witnesses." (Opp'n, Dkt. 121, 11–12) (citing Defs.' Mot., Dkt. 106, Ex. A, Decision of

22   Hearing Officer, p. 32[sic].)  Not only can the Court not find a page 32 of the Hearing Officer's

23   decision (the decision is twenty-four pages long) or the quotation cited by Plaintiffs, it further

24   cannot find any reference by the Hearing Officer to a lack of corroboration as a basis for her

25   credibility determination.  *See* discussion *infra* Section V.  Rather, the Hearing Officer said the

26   parents' testimony contained too many inconsistencies.  (Decision of Hearing Officer, 16, 21.)  In

6

1    any event, Limbert testified in his deposition that he does not recall the specific event.  For these

2    reasons, Limbert's testimony will not be admitted.  *See Amanda J. v. Clark County Sch. Dist.*, 267

3    F.3d 877, 888 (9th Cir. 2001) (the credibility of witnesses is generally a decision for the hearing

4    officer).[1]

5              Next, Plaintiffs request inclusion of evidence regarding Defendants' compliance

6    with state and school district reporting regulations pertaining to the use of aversive interventions.[2]

7    The Hearing Officer disallowed such evidence and the Court follows suit, finding that Defendants'

8    compliance or noncompliance with the reporting statute is irrelevant in determining whether

9    Preschooler was denied a FAPE.  However, Plaintiffs also assert that Defendants failed to disclose

10   two Aversive Intervention Reports and one Corrective Action Report containing evidence of

11   improper behavior interventions.  Because the reports are relevant and were not made available to

12   the Hearing Officer, the Court allows them to supplement the record.

13             And last, Plaintiffs seek to introduce evidence of events that occurred subsequent to

14   the administrative hearing, particularly an email sent by the school administrator that references

15   abuse of three separate children and a police report containing similar incidents.  Plaintiffs claim

16   that the documents were not disclosed at the hearing.  Because the Court finds them relevant, the

17   Court will allow them into evidence.  While Defendants contend that the evidence is cumulative,

18   the Court will consider that factor when conducting its own review of the evidence.

19             Because the Court allows Plaintiffs to supplement the record with additional

20   evidence, *see also* discussion *infra* Section II.A, the Court denies Defendants' Motion for

21   Judgment on the Record at this time.  Defendants may resubmit their motion with briefing that

22   discusses the additional evidence.

---

24   [1] Plaintiffs incorrectly cite to the predecessor case, *Amanda J. v. Clark County Sch. Dist.*, 260 F.3d 1106 (9th Cir. 2001) (opinion withdrawn).

25   [2] An "aversive intervention" includes, among other things, the use of corporeal

26   punishment, including "the intentional infliction of physical pain, including, without limitation, hitting, pinching or striking."  Nev. Rev. Stat. §§ 388.5212, 388.5225.

AO 72
(Rev. 8/82)

**II.  Motions in Limine**

### A.  Expert Testimony of Dr. Stephen Luce (#107)

Relating to the supplementation of the administrative record, Defendants move to exclude the expert testimony of Dr. Stephen Luce.  Following the Review Officer's decision, Plaintiffs hired Dr. Luce to provide two written expert opinions on educational standards and programming for teaching children with autism.  Dr. Luce's first opinion addressed the appropriateness of both the procedures in place at Rhodes Elementary and the behavioral recommendations in Preschooler's IEP.  His second opinion concluded that a "shadow aide" should accompany Preschooler to classroom and other educational events for the full duration of Defendants' responsibility under the IDEA (*i.e.*, until Preschooler is twenty-two years of age). Defendants move to exclude this evidence on the basis that it pertains only to Plaintiffs' first cause of action and, if admitted, would obscure the dispositive issue before this Court on administrative appeal, namely whether the Hearing Officer's decision is supported by the evidence in the record. Defendants further argue that Plaintiffs have not presented sufficient justification for why the evidence was not admitted during the administrative hearing.

The Court finds that Dr. Luce's testimony or expert reports are not admissible to supplement the administrative record.  Essentially, Dr. Luce's reports are a post-hoc review of the Hearing Officer's decision, a task that is charged to this Court.  IDEA, 20 U.S.C. § 1415(i)(2). Additionally, Plaintiffs present no argument why Dr. Luce did not testify in the underlying hearing, as his opinions would certainly have been relevant at that time.

Defendants further assert that Dr. Luce's reports and testimony should be at trial on Plaintiffs' remaining causes of action.  Specifically, Defendants contend that his opinions are limited in scope to those issues presented in the appeal.  Plaintiffs vaguely respond that Dr. Luce provides relevant testimony relating to Defendants' alleged failure to train as alleged in their 42 U.S.C. § 1983 action.  As discussed below, the Court finds that Plaintiffs have not presented

AO 72
(Rev. 8/82)

1    sufficient evidence to sustain their failure to train claim and thus Dr. Luce's testimony is

2    foreclosed from introduction at trial.  *See* discussion *infra* Section III.B.2.

3        **B. Expert Testimony of Dr. Stanton Smith (#105)**

4            Turning away from the issues surrounding the administrative hearing to Plaintiffs'

5    remaining claims for relief, Plaintiffs allege in their Amended Complaint that Preschooler suffers

6    from post-traumatic stress disorder ("PTSD") as the result of the mistreatment received at Rhodes

7    Elementary.  Plaintiff's expert, Dr. Smith, made the diagnosis.  Defendants move to exclude Dr.

8    Smith's testimony on the basis that he employed an unreliable methodology in his diagnosis.

9    According to the Diagnostic and Statistical Manual of Mental Disorders, 4th ed. ("DSM-IV"), a

10   diagnosis of PTSD is appropriate under a four-factor cluster test if a certain number of symptoms

11   from each of the four clusters is present in the patient.  There also exists a proposed modification

12   to the DSM-IV as applied to children and which includes a fifth cluster.  In diagnosing Preschooler

13   with PTSD, Dr. Smith's report does not mention the DSM-IV factors.

14           Federal Rule of Evidence 702 renders scientific expert testimony admissible if: "(1)

15   the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

16   principles and methods, and (3) the witness has applied the principles and methods reliability to

17   the facts of the case."  The Supreme Court charges a trial court with the "task of insuring that an

18   expert's testimony rests on reliable foundation and is relevant to the task at hand."  *Daubert v.*

19   *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  In making this determination, a court

20   considers: (1) whether a theory or technique in question has been or can be tested, (2) whether the

21   theory or technique has been subjected to peer review and publication, (3) the known or potential

22   rate of error of the particular theory or technique and whether means exist for controlling its

23   operation, and (4) the extent to which the theory or technique has been accepted.  *Id.* at 592–94.

24   However, "the inquiry envisioned by Rule 702 is, we emphasize, a flexible one."  *Id.* at 595.  The

25   *Daubert* factors "may or may not be pertinent," and it will depend "on the nature of the issue, the

26   expert's particular expertise, and the subject of his testimony."  *Kumho Tire Co. v. Carmichael*,

1  526 U.S. 137, 150 (1999).  Upon reviewing Dr. Smith's reports and testimony, along with

2  Defendants' rebuttal experts Dr. Derek Allan Ott and Dr. Roxy Szeftel, the Court denies

3  Defendants' Motion in Limine at this time.

4         Dr. Smith asserts in his evaluation report of Preschooler that "[t]here is growing

5  evidence that the DSM-IV-TR criteria is not adequate to diagnose PTSD in young children."

6  (Opp'n, Dkt. 115, Ex. 1, Smith Dep.; Ex. 2 Smith Rpt.)  Defendants' experts appear to support this

7  proposition.  First, Dr. Ott states in his deposition that the DSM-IV criteria need not always be

8  strictly applied in diagnosing children because they may not exhibit the same manifestations as

9  adults, as the criteria were developed for soldiers in combat.  (Opp'n, Ex. 4, Ott Dep. 51:2–15.)

10  Next, Dr. Szeftel acknowledges that increased aggressive behavior may be a component of PTSD

11  in children (Opp'n, Ex. 5, Szeftel Dep. 88:21–89–21), even though it is not listed in the DSM

12  criteria under either the four- or five-factor test. (*See* Mot., 5–8) (discussing the DSM-IV tests.)

13         Dr. Smith partially relied on the alleged increase in Preschooler's aggressive

14  behavior in diagnosing the disorder.  He explains that the significance of deviating from the DSM-

15  IV criteria in diagnosing autistic children is due to an autistic child's inability to effectively

16  communicate like other children.  (Smith Dep. 195:3–19.)  The Ninth Circuit has found, in a case

17  discussing the diagnosis of PTSD based on the same methodology, that "a variance from the

18  DSM's diagnostic criteria will not automatically result in an unreliable diagnosis."  *S.M. v. J.K.*,

19  262 F.3d 914, 921 (9th Cir. 2001).  Such may be the case here.  Dr. Smith has extensive

20  experience in working with autistic children and acknowledges that no literature exists on

21  diagnosing PTSD in autistic children.  More important however, Defendants never questioned Dr.

22  Smith about the DSM-IV factors during his deposition.  Thus, Defendants' argument that Dr.

23  Smith "conceded" and "disclosed" that he did not employ the DSM-IV test is a

24  mischaracterization of the evidence.  Nor does there appear to be questioning regarding Dr.

25  Smith's expertise in the area of PTSD.  In short, Defendants have not convinced this Court that Dr.

26  Smith's diagnosis is unreliable.

1        Moreover, the fact that Drs. Ott and Szeftel find Preschooler's PTSD misdiagnosed

2   is no basis in itself to disallow Dr. Smith's testimony.  Courts are allowed to admit "questionable

3   testimony if it falls within 'the range where experts might reasonably differ, and where the jury

4   must decide among the conflicting views.'"  *S.M.*, 262 F.3d at 921 (citing *Daubert*, 509 U.S. at

5   596).  Dr. Smith's testimony falls within that range.  As the *S.M.* court notes, "commentators have

6   repeatedly observed [that] 'mental health professionals involved in everyday practice may disagree

7   more than half the time even on major diagnostic categories such as schizophrenia and organic

8   brain syndrome."  *Id.* (citation and internal quotations omitted).

9        Defendants further attempt to disqualify Dr. Smith's expert testimony on the basis

10  that his testimony was excluded in a related case involving another student at Rhodes Elementary,

11  Preschooler I.  *Doe v. State of Nevada*, No. 2:03-CV-1500 (D. Nev. Dec. 1, 2003) (Hicks, J.)

12  ("Preschooler I").  In Preschooler I, Judge Hicks excluded Dr. Smith's testimony on the grounds

13  that Dr. Smith's only diagnoses of PTSD in autistic children were of Preschoolers I and II, and that

14  he did not rely on the DSM-IV factors or the proposed five-factor test.  *Id.*, 2006 WL 2583746 at

15  *19 (citations omitted).  As stated earlier, Defendants never deposed Dr. Smith regarding his

16  alleged lack of reliance on the DSM-IV factors.  Further, the fact that his only diagnoses of PTSD

17  in autistic children includes those involved in these two related cases does not necessarily render

18  his diagnosis incorrect.  The Court also notes that while Defendants' instant Motion in Limine is

19  nearly identical to the one brought in Preschooler I's case, Plaintiff's current Opposition contains

20  arguments not raised in that case.

21       For these reasons, Defendants' Motion in Limine is denied.  This ruling does not

22  preclude Defendants from further attempts to disqualify him.

23       Defendants bring one additional motion in limine to exclude various witnesses.  For

24  ease of context, the Motion is addressed following the Court's rulings on summary judgment.

25  / /

26  / /

### III.  Motions for Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party.  *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1148 (D. Nev. 2005) (citations omitted).

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002).  The non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

The Court now turns to Defendants' summary judgment motions.

### A.  Assault, Battery, Negligence, Use of Aversive Interventions (#108)

#### 1.  Assault, Battery, and Use of Aversive Interventions

Plaintiffs' sixth cause of action asserts various intentional torts against Defendant LiSanti.  Defendants claim immunity under Nev. Rev. Stat. § 41.032(2), which provides an exception to Nevada's waiver of sovereign immunity for discretionary acts "whether or not the discretion involved was abused."  The Court finds that this statute does not extend to intentional torts.  In a very recent decision issued by the Nevada Supreme Court, the court observed that § 41.032(2) mirrored the Federal Tort Claims Act ("FTCA").  *Martinez v. Maruszczak*, 168 P.3d

720, 727 (Nev. 2007).  In so comparing, the court opined that the "purpose of both the FTCA and

Nevada's waiver of sovereign immunity is 'to compensate victims of government *negligence* in

circumstances like those in which victims of private negligence would be compensated.'"  *Id.*

(citations omitted) (emphasis added).  Because the Nevada Supreme Court interprets § 41.032(2)

to compensate negligence victims, the Court finds the discretionary acts statute inapplicable to the

intentional torts asserted here.

        Plaintiffs counter that LiSanti's alleged intentional acts and violations of Plaintiffs'

Fourth Amendment violations are actionable under Nev. Rev. Stat. § 41.0334(2), wherein Nevada

waives immunity for "*any action* for injury, wrongful death or other damage: (a) [i]ntentionally

caused or contributed by an officer or employee of the state or any of its agencies or political

subdivisions; or (b) [r]esulting from the deprivation of any rights, privileges or immunities secured

by the United States Constitution or the constitution of the State of Nevada."  (emphasis added).

While Defendants argue that this statute applies only to criminal conduct, the Court disagrees by

way of the legislature's use of the words "any action."   *See Martinez*, 168 P.3d at 725 (citing *State

v. Silva*, 478 P.2d 591, 593 (Nev. 1970)) (stating that Nevada's waiver of sovereign immunity is

broadly construed).  This statute is limited however to those actions committed within the scope of

employment.  Nev. Rev. Stat. § 41.03475.  Here, the Parties do not dispute that LiSanti's acts

occurred within the scope of her employment and thus LiSanti is not immune from any intentional

tortious conduct found by a jury to have occurred.

        Plaintiffs also assert *respondeat superior* liability against the School District for

LiSanti's intentional torts.  Where Nevada waives sovereign immunity, "liability [is] determined in

accordance with the same rules of law as are applied to civil actions against natural persons and

corporations."  Nev. Rev. Stat. § 41.031.  Nevada law holds employers liable for the intentional

torts of its employees committed within the scope of employment.  *Rockwell v. Sun Harbor

Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996); *Prell Hotel Corp. v. Antonacci*, 469 P.2d 399,

400 (Nev. 1970).  Because the Parties do not dispute that LiSanti's conduct occurred within the

AO 72
(Rev. 8/82)

1    scope of her employment, the School District is subjected to liability.  Summary judgment is

2    therefore denied on Plaintiffs' intentional tort claims.

3            For the same reasons as applied to intentional torts, § 41.0334(2)(b) provides no

4    immunity for Plaintiffs' claims for violations of Fourth Amendment rights.  (providing waiver of

5    immunity for "any action . . . [r]esulting from the deprivation of any rights . . . secured by the

6    United States Constitution.").

7                         **2. Negligence**

8            Plaintiffs' negligence claim against LiSanti and the School District is two-fold.

9    First, LiSanti was negligent in causing Preschooler bodily, mental, emotional, behavioral and

10   psychological damage.  Second, the School District is liable for her negligence under *respondeat*

11   *superior* and independently for their negligent hiring, training and supervision of LiSanti.

12   Through the current motion, Defendants seek immunity only for LiSanti's and the School

13   District's *respondeat superior* liability under Nev. Rev. Stat. § 41.032(2).  As discussed above,

14   this statute excepts from Nevada's waiver of sovereign immunity any discretionary acts committed

15   by employees, even if that discretion is abused.  § 41.032(2).  In the recent *Martinez* decision, the

16   Nevada Supreme Court adopted a new test for analyzing whether an act falls under the

17   discretionary act statute, the *Berkovitz-Gaubert* test, appropriately named after two United States

18   Supreme Court decisions.  168 P.3d at 728–29.  Under this two-part test, "to fall within the scope

19   of discretionary-act immunity, a decision must (1) involve an element of individual judgment or

20   choice and (2) be based on considerations of social, economic, or political policy."  *Id.* at 729.

21           Because this test was adopted subsequent to the Parties' briefing, the Parties did not

22   specifically address the *Berkovitz-Gaubert* factors.  Nevertheless, the Court finds the Parties'

23   briefs instructive on the first prong.  LiSanti's acts in disciplining Preschooler certainly involve an

24   element of judgment or choice.  Where employees must "continually assess the changing situation

25   and improvise as they proceed[]," the action is discretionary.  *Herrera v. Las Vegas Metro. Police*

26   *Dep't*, 298 F. Supp. 2d 1043, 1054 (D. Nev. 2004) (finding that an officer's act was discretionary

AO 72
(Rev. 8/82)

1    when he shot and killed a mentally ill person).  *See also Ortega v. Reyna*, 953 P.2d 18, 23 (Nev.

2    1998) (state trooper's decision to stop appellant and take him to jail required the officer to use

3    personal judgment); *Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 933 (Nev. 1994)

4    (finding that decision to handcuff in front or in back is a judgment call); *Foley v. Taylor*, 695

5    So.2d 1196, 1199 (Ala. Civ. App. 1997) ("well-settled Alabama law provides that supervision of

6    students is a discretionary act.").  LiSanti used judgment in deciding the manner in which to

7    discipline Preschooler and thus the first prong of the *Berkovitz-Gaubert* test is satisfied.

8           Regarding the second prong, immunity attaches for discretionary acts only if the

9    discretion used is "of the kind that the discretionary-function exception was designed to shield."

10   *Martinez*, 168 P.3d at 728.  Because the *Martinez* decision issued subsequent to the instant

11   briefing, the Court will allow the Parties to supplement their briefs to address the second prong of

12   the *Berkovitz-Gaubert* test.

13          Further, the Court notes that Plaintiffs' Opposition delves into the merits of their

14   negligent hiring, training and supervision claim.  Because the argument falls outside the scope of

15   Defendants' Motion, the Court does not address it here.  *But see* discussion *infra* Section III.B.2.

16   For these reasons, the Court denies Defendants' Motion.

17   **B.  42 U.S.C. § 1983 and *Monell/Canton* (#110, #113)**

18        **1.  Defendant LiSanti (#110)**

19          LiSanti moves for summary judgment on Plaintiffs' 42 U.S.C. § 1983 claim for

20   violations of Preschooler's Fourth and Fourteenth Amendment rights as a result of her alleged

21   mistreatment.  Though brought under both Amendments, the Ninth Circuit categorized Plaintiffs'

22   claim as one under the Fourth Amendment on interlocutory appeal of Defendants' prior motion to

23   dismiss.  *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1181 (9th Cir. 2007)

24   (noting the trend away from the Fourteenth Amendment "shocks the conscious" test in favor of the

25   reasonableness test of the Fourth Amendment in school abuse cases).  On this claim, the Court

26   finds that Plaintiffs have submitted sufficient evidence on which a reasonable jury could find that

AO 72
(Rev. 8/82)

1   LiSanti violated Preschooler's Fourth Amendment right to remain free from excessive force at

2   school.  *P.B. v. Koch*, 96 F.3d 1298, 1302–03 (9th Cir. 1996).

3                  To support many of their allegations of abuse, Plaintiffs submit a police report from

4   the Clark County School District Police Department that contains the sworn statements of various

5   individuals who reported to have witnessed the mistreatment.  Because the police report contains

6   inadmissible hearsay, the Court does not consider this evidence.  *Orr v. Bank of Am., NT & SA*,

7   285 F.3d 764, 773 (9th Cir. 2002) (court may only consider admissible evidence in ruling on a

8   summary judgment motion).  Also inadmissible is any evidence of three incidents where LiSanti

9   made Preschooler walk barefoot from the bus to the school.  The Ninth Circuit ruled that these

10  allegations, even if proved, would not violate Preschooler's Fourth Amendment rights.

11  *Preschooler II*, 479 F.3d at 1181.  Further, an alleged incident of non-party teacher's aide Peggy

12  Cravish ("Cravish") "jerking" Preschooler off the floor is likewise inadmissible, as Cravish's

13  conduct is irrelevant to LiSanti's liability.

14                  Turning to the admissible evidence submitted by Plaintiffs to show that LiSanti

15  used excessive force toward Preschooler, Patricia Been ("Been"), a part-time teacher in

16  Preschooler's classroom, testified in deposition that she witnessed LiSanti being rough, and

17  screaming and posturing, and that she roughly grabbed her students by the arm to place them in

18  timeout.  Further, Kathy DeSario ("DeSario"), a teacher's aide, testified that LiSanti once force-fed

19  Preschooler yogurt with crumpled potato chips by prying his mouth open with her fingers, making

20  him cry and throw up.  According to DeSario, the force-feeding spanned the course of one week.

21  DeSario also testified that once during "circle time," LiSanti slapped Preschooler.  Though no one

22  witnessed the incident, LiSanti told DeSario and others that she "had to do it," and admonished

23  them, "You didn't see that girls."  And last, a special education administrative specialist, Julie Rae

24

25

26

AO 72
(Rev. 8/82)

1    Kaspar, testified that LiSanti once told her that LiSanti disliked autistic children.  This evidence,

2    Plaintiffs conclude, demonstrates a violation of Preschooler's Fourth Amendment rights.[3]

3          While Defendants do not dispute that the incidents happened, they contend that

4    Plaintiffs have exaggerated the nature of LiSanti's conduct.  First, Defendants cite to the

5    deposition testimony of Plaintiffs' witnesses, DeSario and Been, wherein they both categorize

6    LiSanti's conduct as inappropriate but not abusive.  Next, LiSanti testified that her actions were

7    not intentional.  For example, the incident wherein DeSario claims that LiSanti apologized for

8    slapping Preschooler, LiSanti explains that she apologized to Preschooler because her hitting him

9    was unintentional.  In defending the force-feeding incident, LiSanti explained that her purpose was

10   to introduce him to new foods.  Defendants submit additional testimony indicating that

11   Preschooler would continue to smile and laugh following so-called incidents of abuse by LiSanti.

12   There also exists a dispute between the Parties' whether the slapping incident witnessed by Been

13   involved Preschooler I or II.  And last, to rebut the allegation that LiSanti stated she disliked

14   autistic children, Defendants offer that she herself is the mother of an autistic child.

15          The Court finds that the discrepancies among the witnesses create a genuine issue

16   of material fact on whether LiSanti's conduct was unreasonable.  As held by the Ninth Circuit on

17   interlocutory appeal, Plaintiffs allegations, if proven, could establish violations of Preschooler's

18   constitutional rights.  *Preschooler II*, 479 F.3d at 1180–81.  Because the Court finds that Plaintiffs

19   have submitted sufficient admissible evidence on which a reasonable jury could find LiSanti's

20   conduct toward Preschooler unreasonable, the Court denies summary judgment on this claim.

21           **2.  School District Defendants (#113)**

22          Presuming Plaintiffs prevail on their constitutional claim, Plaintiffs attempt to hold

23   the School District and the Board of Trustees liable for Preschooler's constitutional injuries.

24   _____

25        [3] The Courts notes that there exists additional admissible evidence of mistreatment of
     Preschooler by LiSanti that Plaintiffs have failed to include in their brief, but in the interests
26   of justice, the Court considers.  (*See e.g.*, Pls.' Stmt. Mat. Facts, Ex. 2, DeSario Dep.
     30:25–31:7 (testifying that LiSanti would cause Preschooler to slap himself).)

AO 72
(Rev. 8/82)

1   Plaintiffs' fourth cause of action is a general § 1983 claim against all Defendants, while their fifth

2   claim asserts a more narrow § 1983 claim under the *Monell/Canton* rubric of negligent training.

3   Defendants School District, Board of Trustees, Superintendent Garcia, administrative personnel

4   Green, Harley, and Davis and principal Wyatt bring the instant motion.

5           As succinctly stated by the Ninth Circuit, Plaintiffs claims for supervisory liability

6   rest on a variety of theories, including the allegations that the "School Officials ratified a custom

7   that subjected Preschooler to an educational environment in which he was physically and

8   emotionally abused, in part by failing to train . . . or hire qualified individuals," and "abdicated

9   their duty to report and discipline LiSanti when they first became aware of the alleged abuse."

10  *Preschooler II*, 479 F.3d at 1182.  Supervisory liability can be imposed if Plaintiffs show that these

11  Defendants "demonstrated disregard of their responsibilities in hiring, training, supervising,

12  disciplining and reporting abuses committed by LiSanti." *Id.* at 1183 (relying on *Menotti v. City of*

13  *Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005) (stating that "[s]upervisory liability is imposed

14  against a supervisory official in his individual capacity for his own culpable action or inaction in

15  the training, supervision, or control of his subordinates, for his acquiescence in the constitutional

16  deprivations of which the complaint is made, or for conduct that showed a reckless or callous

17  indifference to the rights of others.")).

18          The Court finds that Plaintiffs have raised a genuine issue of fact sufficient to

19  maintain their claim on the issue of Defendants' alleged failure to discipline and report abuse.  As

20  discussed below, factual issues remain on Plaintiffs' claim for failure to report, disclose and

21  remediate allegations of abuse as prescribed by Nevada's reporting statutes, specifically whether

22  Defendants had knowledge of the abuse and whether they failed to react.  *See* discussion *infra*

23  Sections III.C, D.  As discussed in more detail below, Defendants' knowledge of mistreatment of

24  Preschooler and failure to react and remediate could lead a reasonable jury to find that Defendants

25  were deliberately indifferent to Preschooler's rights and/or caused some of his injuries.  *Id.*  Should

26  Plaintiffs succeed on their deliberate indifference claim, a reasonable jury could find that

18

1   Defendants "demonstrated disregard of their responsibilities in . . . disciplining and reporting

2   abuses, " thereby imposing supervisory liability on the named Defendants. *Preschooler II*, 479

3   F.3d at 1182.

4               Plaintiffs have not, however, raised a triable issue on Defendants alleged failure to

5   train or hire qualified teachers.  Discussing first the hiring of unqualified teachers, Plaintiffs assert

6   that LiSanti was neither certified to teach autistic children nor did she receive a waiver of

7   certification from the State of Nevada as required by law.  Thus, their argument concludess LiSanti

8   should never have been hired.  The Court finds that Plaintiffs have failed to show causation

9   between Preschooler's injuries and LiSanti's lack of certification.  As submitted by Defendants,

10  LiSanti has a vast array of education and experience in dealing with autistic children, both

11  professionally and personally as the mother of an autistic child.  She has a both an undergraduate

12  and Master's degree in special education, she has also obtained thirty-two credits of education

13  beyond her Master's degree, and attended all training offered to her by the School District.

14  Further, Her formal education included a focus on autism, and all of her in-service training on

15  behavioral issues and language development addressed children with autism.  Additionally,

16  LiSanti's career up until the 2002-2003 school year included teaching autistic children.   Simply

17  put, Plaintiffs fail to prove that the mere fact that LiSanti was not certified, she was nevertheless

18  unqualified for her job.  While Plaintiffs ultimately conclude that "a reasonably informed and

19  trained special education teacher or administrator would not have hired Kathleen LiSanti," (Opp'n,

20  Dkt. 123, 15–16), Plaintiffs submit no evidence of any prior misappropriate conduct by LiSanti,

21  nor do they submit testimony that based on her qualifications and experience LiSanti was

22  wrongfully or negligently hired.

23               The Court also rejects Plaintiffs' claim that a failure to properly train LiSanti was a

24  contributing factor in Preschooler's injuries.  To show that Defendants' training program was

25  effective, Plaintiffs discuss Nevada's statutory Model Positive Behavioral Intervention Plan.  Nev.

26  Rev. Stat. § 388.5285.  Plaintiffs emphasize that the statute requires the Board of Trustees to

AO 72
(Rev. 8/82)

1   "provide for appropriate training for the members of the staff of the schools within the school

2   district." *Id.*  While Plaintiffs assert that Defendants violated this statute, they never explain how.

3   Defendants submitted various forms of evidence demonstrating that the School District and the

4   Board of Trustees provided training on positive behavioral interventions, best practices related to

5   instruction of autistic children, Nevada's reporting requirements, the School District's zero

6   tolerance policy toward abuse, and students' rights, yet Plaintiffs never discuss this evidence. Even

7   if Plaintiffs evidence can be construed as demonstrating that Defendants' training program could

8   have been improved, Plaintiffs cite no evidence or make any argument that any failure to train was

9   the result of "deliberate indifference to the rights of persons with whom the [public employee]

10  comes into contact." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Nor do they argue that

11  LiSanti's alleged mistreatment of Preschooler resulted from the shortcomings of a faulty training

12  program as opposed to an adequately trained person who made some mistakes. *Id.* at 390–91.

13          Further, it appears that Plaintiffs' failure to supervise claim raises the same

14  arguments as raised in support of their improper training and hiring arguments and thus the Court

15  likewise dismisses Plaintiffs' failure to supervise claim.

16          Because genuine issues of material fact exist surrounding Defendants' alleged

17  knowledge of the mistreatment of Preschooler and their alleged lack of subsequent remediation of

18  the problem, the Court denies Defendants' Motion for Summary Judgment.

19          **C.  Negligent Failure to Report, Disclose, and Remediate (#111)**

20          Defendants School District, Board of Trustees, LiSanti, Darryl Wyatt ("Wyatt"),

21  Charlene Green ("Green"), and Michael Harley ("Harley") move for summary judgment on

22  Plaintiffs' eighth cause of action for negligent failure to report, disclose and remediate under the

23  aversive intervention law, Nev. Rev. Stat. § 388.521 *et seq.*, and the child abuse laws, Nev. Rev.

24  Stat. § 432B.010 *et seq.*  The aversive intervention statutes state that "[a] person employed by the

25  board of trustees of a school district or any other person shall not use any aversive intervention on

26  a pupil with a disability." § 388.5265. An "aversive intervention" includes, among other things,

AO 72
(Rev. 8/82)

1   the use of corporal punishment, defined as "the intentional infliction of physical pain, including,

2   without limitation, hitting, pinching or striking." §§ 388.5212, 388.5225. The statutes further

3   mandate reporting of any violations "not later than 24 hours after the violation occurred, or as soon

4   thereafter as the violation is discovered." § 388.5295. The child abuse statutes define child abuse

5   to include, among other things, "[p]hysical or mental injury of a nonaccidental nature." §

6   432B.020. This section also mandates reporting of such abuse. § 432B.220. Based on these

7   statutes, Plaintiffs argue that Defendants' negligence in failing to report instances of abuse and

8   take proper remedial action caused Preschooler's injuries.

9           As a preliminary matter, Defendants argue that the aversive intervention and child

10  abuse statutes cannot form the basis of Plaintiffs' claim. The Court has already held that violation

11  of these statutes can give rise to a claim of negligence per se and contrary to Defendants'

12  contention, the Nevada Supreme Court's decision in *Richardson* does not change this result.

13  (Order, Dkt. 24); *Richardson Const. Inc. v. Clark County Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007).

14  The *Richardson* court clarified that a private cause of action cannot be maintained for violation of

15  a statute only when the legislature has so expressed. *Id.* Here, Plaintiffs do not assert a cause of

16  action under the aversive intervention or child abuse statutes but merely use them in establishing

17  certain elements of their negligence claim. *Ashwood v. Clark County*, 930 P.2d 740, 744 (Nev.

18  1997) (stating that "[a] violation of statute establishes the duty and breach elements" of a

19  negligence action).

20          Turning to the negligence claim, Plaintiffs must proves duty, breach, causation and

21  damages. *Sims v. Gen. Tel. & Elecs.*, 815 P.2d 151, 154 (Nev. 1991). Defendants concede that a

22  genuine issue of material facts exists on the duty and breach elements but argue that Plaintiffs'

23  claim fails for lack of causation and damages. To establish causation, a plaintiff must prove that

24  the defendants acts were both the actual and proximate causes of his injuries. *Id.* Actual causation

25  means that but for the defendant's negligence, plaintiff would not have been damaged. *Dow*

26  *Chem. Co. v. Mahlum*, 970 P.2d 98, 107 (Nev. 1998). Proximate causation limits a defendant's

1    liability to the foreseeable consequences of his actions.  *Id.*  Here, Plaintiffs contend that

2    Defendants were on notice of the alleged abuse and that a proper reporting scheme and subsequent

3    investigation into the allegations would have prevented Preschooler's injuries.

4            To show that but for Defendants' negligence, Preschooler would not have been

5    abused, Plaintiffs first attempt to establish that Defendants were on notice of LiSanti's conduct as

6    early as September 2002.  The Court rejects this argument.  To support their contention, Plaintiffs

7    argue that two parents of a fellow student notified both Defendants principal Wyatt and

8    Superintendent Carlos Garcia ("Garcia"), that a nonparty teacher's aide, Cravish physically and

9    mentally abused Preschooler I.  Plaintiffs conclude that a proper investigation into this claim

10   would have uncovered LiSanti's abuse and use of aversive interventions.  This argument fails not

11   only because LiSanti was on medical leave during this time and would therefore be unavailable for

12   investigation or observation, but also because the incident is too attenuated to establish causation

13   of future abuse involving two entirely separate individuals and incidents.

14           Next, Plaintiffs assert that Defendants were on notice by at least November 2002.

15   Plaintiffs assert that in November 2002, teacher's aide Been reported an allegation of LiSanti's

16   screaming and posturing over the students to her supervisor, Maureen Powers, Defendant Jackie

17   Green ("Green") and Jeff Atkinson ("Atkinson") of the "Low Incidence Team."  However, upon

18   review of Plaintiffs' submitted evidence, Been testified only that she notified Green.[4]  Defendants

19   argue that while Been initially testified that she notified Green, Been later changed her testimony

20   to state that she notified an unidentified gentleman, possibly Atkinson.  The Court finds that the

21   inconsistencies in the testimony create a genuine issue of material fact regarding who, when and if,

22   Been notified anyone of LiSanti's alleged mistreatment of Preschooler.  Further, the Court declines

23   to address Defendants' passive argument that any knowledge of mistreatment by Been as reported

24   _____

25           [4] The Court notes that Plaintiffs' Opposition to the instant Motion presents a litany of
     direct quotations from their Statement of Material facts without explanation or argument,
26   sending the Court on a paper chase through Plaintiffs' voluminous record to decipher their
     evidence and their arguments.

AO 72
(Rev. 8/82)

1    to Green or Atkinson cannot be imputed to the named Defendants.  Not only does Defendants

2    argument ignore that Green is a party, it is also made without citing any legal authority.

3            Plaintiffs then argue that Defendants were possibly notified prior to November

4    2002.  For support, they submit the deposition of DeSario, who testified that she notified principal

5    Wyatt of certain allegations of mistreatment "some time" prior to November 2002 but cannot

6    recall when.  Wyatt testified that DeSario made no report until March or April 2003.  Defendants

7    point out that DeSario later changed her testimony and agreed with Wyatt that she did not come

8    forth with her complaints until 2003.  Defendants request the Court to dismiss DeSario's

9    inconsistencies in favor of Wyatt's testimony that any mistreatment was not reported until March

10   or April 2003 but the Court is in no position to judge the credibility of witnesses on summary

11   judgment.  Rather, the Court finds that there remains a genuine issue of material fact regarding

12   when Defendants were put on notice of the alleged mistreatment of Preschooler.

13           Notwithstanding the factual allegations surrounding when Defendants were notified

14   of Preschooler's mistreatment, Plaintiffs must next prove that Defendants could have acted to stop

15   future occurrences.  To make this connection, Plaintiffs cite a California case for the proposition

16   that the failure to investigate or report occurrences of child abuse greatly enhances the chances of

17   repeated and more severe abuse.  *Landeros v. Flood*, 551 P.2d 389 (Cal. 1976).  The *Landeros*

18   case involved a child diagnosed with battered child syndrome.  *Id.*  In discussing this syndrome,

19   the court stated that one of the distinguishing characteristics is that the assaults on the child are not

20   isolated events but rather part of an abusive environment in which the abuse will both continue

21   and increase.  *Id.* at 395.  Here, there is no allegation that Preschooler suffered from battered child

22   syndrome and thus the Court cannot categorically find that a failure to report definitely results in

23   future acts of abuse.  Such a determination is left for the trier of fact that rests on a variety of

24   circumstances, including whether the claims of abuse were reportable or substantiated.

25   / /

26

AO 72
(Rev. 8/82)

1    The Parties dispute the significance of whether the allegations were substantiated.

2    As Defendants emphasize, Plaintiffs' witnesses described the various incidents of mistreatment as

3    inappropriate rather than abusive.  Further, Wyatt concluded that certain of the allegations were

4    either unsubstantiated or non-reportable.  Plaintiffs contend that unsubstantiated claims of abuse

5    need to be reported, relying on a New York case, *Kimberly S.M. v. Bradford Central School*.  226

6    A.D.2d 85 (S.D.N.Y. 1996).  Plaintiffs' argument is not on point.  *Kimberly S.M.* involved whether

7    a teacher violated a statutory duty to report.  *Id.* at 89–91.  The court held that a teacher can be held

8    liable for failure to report even if the abuse allegations are later found unsubstantiated.  *Id.*  The

9    current claim is one for negligence.  Certainly, whether the abuse allegations were unsubstantiated

10   impacts whether the failure to report them caused Preschooler's future injuries.  If Defendants

11   found no reportable conduct prior to April 2003 as they contend, their failure to report could not

12   have caused future occurrences of reportable conduct.

13   Further, the Court notes that Defendants did take certain measures in response to

14   the allegations of abuse.  For example, the evidence shows that the Low Incidence Team was

15   present in the classroom following Been's report.  However, the record is unclear as to the extent,

16   nature, purpose or outcome of their presence.  Without any such evidence, the Court is unable to

17   evaluate whether Defendants' remedial response to Been's allegation can be found negligent.

18   Thus, the Court finds there exists many genuine issues of material fact regarding causation.

19   And last, Defendants claim that Preschooler was not damaged by the alleged

20   mistreatment, arguing that any assaults and batteries suffered are insufficient to satisfy the

21   damages element of Plaintiffs' negligence claim.  The Court disagrees and thus finds that the

22   alleged assaults and batteries suffered by Plaintiffs are the damages caused by Defendants' alleged

23   negligent failure to report.

24   Because many genuine issues of material fact exist regarding notification and

25   causation, the Court denies Defendants' Motion for Summary Judgment.

26   / /

AO 72
(Rev. 8/82)

**D. Compensatory Damages Under the ADA and RA (#112)**

Plaintiffs' second and third claims for relief assert violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") against the School District and the Board of Trustees.  The Court has previously interpreted these claims as premised on Defendants' alleged failure to respond to allegations of abuse.  (*See* Order, Mot. Dismiss, Dkt. 24, 10.) Defendants move for summary judgment only on the issue of damages.  While Plaintiffs devote much discussion to the merits of their underlying ADA and RA claims, Defendants move only on the issue of damages and thus the Court declines to address such arguments.

Turning to the issue at bar, under both the ADA and RA, compensatory damages are available upon a showing of discriminatory intent.  *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002).  To prove discriminatory intent, one must show deliberate indifference, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).  A plaintiff proves the first element by showing that the public entity is on notice that an accommodation is required.  *Id.* at 1139.  The second element is satisfied when the failure to act "is more than negligent, and involves an element of deliberateness."  *Id.* (citation omitted).

Regarding the first element of deliberate indifference—whether the public entity was on notice that an accommodation is required, *id.*—Defendants argue that Plaintiffs have submitted no evidence that Defendants failed to act upon any reports or allegations of abuse.  As discussed above, *supra* Section III.C.1, many genuine issues of material facts exist surrounding Defendants' responses to the reports of abuse and aversions by LiSanti.  For example, testimony exists to show that in response to certain allegations, Wyatt dismissed them as either unsubstantiated or non-reportable.  Because Plaintiffs have submitted evidence showing that Defendants could have been on notice that Preschooler was being mistreated, they raise a genuine issue of material fact regarding the first element of deliberate indifference.

1     Turning to the second element, which requires a defendant's failure to act to

2 involve some element of deliberateness, *id.*, Defendants submit evidence indicated that the School

3 District provides training regarding pedagogical methods, appropriate "best practice" responses to

4 behavioral concerns for all children including disabled children, constitutional, federal, and state

5 rights of all students including disabled students, and state reporting requirements for aversive

6 interventions.  Thus, Defendants' maintain, they were not deliberately indifferent to Preschooler's

7 abuse.  However, Defendants' argument fails in that it does not address a response to the real issue

8 at hand: whether Defendants deliberately failed to act in response to the allegations of abuse as

9 Plaintiffs contend.  The fact that Defendants provided training prior to the occurrences of

10 mistreatment fails to address Plaintiffs' concerns that defendants failed to act in response to the

11 allegations of mistreatment.

12     Because the Court finds there remains genuine issues of material fact surrounding

13 Defendants' actions or failure to act in response to the abuse and aversive intervention allegations,

14 as well as the timing of the notification, the Court cannot determine as a matter of law that

15 Plaintiffs are not entitled to compensatory damages under the ADA or RA should they succeed in

16 proving the underlying merits of their claims.  A reasonable jury could find that Defendants acted

17 with deliberate indifference, especially in light of the extensive training Defendants purport to

18 have given.  *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1991)

19 ("Whether a local government entity has displayed a policy of deliberate indifference is generally a

20 question for the jury.").  Summary judgment is therefore denied.

21 **IV.  Motion in Limine to Exclude Various Witnesses (#109)**

22     In light of the foregoing analysis, the Court turns to Defendants' motion to exclude

23 the testimony of the following witnesses: Penny Clark (Clark), Missie Doe's Parents, Chele and

24 Mark Steelsmith ("the Steelsmiths"), Kristi Marlor ("Marlor"), John Leis ("Leis"), Terry Phelps

25 ("Phelps"), Pam Knobel ("Knobel"), Sandra Williams ("Williams"), and Nora Escobedo

26 ("Escobedo").  Defendants characterize these witnesses as disgruntled employees and parents of

AO 72
(Rev. 8/82)

1   children enrolled at other elementary schools in the Clark County School District and move to

2   exclude the testimony on the grounds that certain witnesses were not disclosed until the last day of

3   discovery, that Plaintiffs failed to disclose contact information for certain witnesses, that the

4   testimony is irrelevant, and that the testimony is more prejudicial than probative.  The Court

5   addresses the procedural arguments first.

6          Defendants first argue that Parents of Missie Doe, the Steelsmiths, and Marlor were

7   not disclosed until the last day of discovery.  The Federal Rules prevent a party who, without

8   substantial justification, fails to timely disclose witnesses or information unless such failure is

9   harmless.  Fed. R. Civ. P. 37(c)(1).  Plaintiffs also failed to disclose the addresses of Parents of

10  Missie Doe and Marlor pursuant to Fed. R. Civ. P. 26(a)(3)(A).  Further, Defendants claim

11  Plaintiffs did not disclose the correct address of Escobedo.  The Court rejects each argument.

12  Regarding the late disclosure, discovery ended in November 2005.  Since then, Defendants have

13  sat on their rights to bring any motion to reopen discovery on account of Plaintiffs' last-minute

14  disclosure.  The same rationale applies to reject Defendants' claim that Missie Doe's Parents and

15  Marlor should be precluded from testifying as a result of Plaintiffs' failure to disclose their's and

16  Escobedo's contact information .  Defendants, until now, gave no indication of their desire to

17  depose these witnesses, and therefore any prejudice is caused by Defendants' own dilatory

18  conduct.

19          Turning to the substance of the proposed testimony, Plaintiffs seek the introduction

20  of evidence to prove that the School District had a custom and practice of failing to train, report,

21  investigate, correct and remediate child abuse and aversive intervention and to show Defendants'

22  deliberate indifference toward the fact that Preschooler's federally protected rights were being

23  violated.  Specifically, the witnesses include parents who claim that their children were abused by

24  various teachers, at various elementary schools in either the 2002–2003 school year or in 2005.

25  Defendants object on the grounds that incidents of abuse that did not occur in Preschooler's

26  classroom during the 2002–2003 school year are irrelevant.

AO 72
(Rev. 8/82)

1    The Court finds that the proposed testimony is irrelevant to Plaintiffs' claim for

2  failure to report, investigate, correct and remediate.  In that claim, Plaintiffs assert that but for

3  Defendants' failure to act on the allegations of abuse against Preschooler, Preschooler would not

4  have suffered future incidents of abuse.  Any occurrences of failing to report instances at other

5  schools, against other students, by other teachers, and during different academic years is not only

6  irrelevant but highly prejudicial to the School District in that it tends to take the form of

7  impermissible character evidence.  *See U.S. v. Yazzie*, 188 F.3d 1178, 1190 (10th Cir. 1999)

8  (discussing the fine line between habit and character evidence).

9    Plaintiffs also attempt to use the proposed evidence to support their claim for

10  negligent training.  As discussed above, *see* discussion *supra* Section III.B.2, the Court finds that

11  Plaintiffs have submitted insufficient evidence on which to sustain their allegations that

12  Defendants' failure to train caused Preschooler's injuries.  For the foregoing reasons, the proposed

13  testimony is inadmissible.

14    Should the evidence come in for any other reason, the Court further precludes the

15  following testimony.  First, the Court renders inadmissible any testimony regarding the School

16  District's alleged retaliation against parents or employees for reporting abuse.  Plaintiffs assert no

17  claim of retaliation and thus the testimony is irrelevant and prejudicial.  Second, the incident

18  testified to by Leis regarding the sexual assault of his son by another student is both highly

19  prejudicial and irrelevant because the incident occurred at the hands of another student, not a

20  School District employee.

21    Further, Plaintiffs argue for the inclusion of witnesses not discussed in Defendants'

22  Motion and thus the Court declines to address those arguments.

23    **V.  Sanctions against Plaintiffs' Counsel**

24    The Court finds it necessary to raise a concern regarding the quality and form of

25  Plaintiffs' counsels' briefs.  In reading the submissions, the Court struggled to discern the precise

26  arguments made therein.  Decoding incorrect legal citations and references to the record,

overlooking countless typos and incomplete sentences, making sense of undeveloped and nonresponsive arguments, enduring single-spaced formatting, and locating pinpoints were just some of the frustrations encountered by the Court in ruling on the instant Motions.  Not only are counsel's deficiencies violative of local briefing rules,[5] they have unnecessarily cost the Court considerable time deciphering counsel's arguments, risking both a misunderstanding of Plaintiffs' assertions as well as possible injustice to Plaintiffs.

Accordingly, the Court finds it necessary to sanction Plaintiffs' counsel in the amount of one thousand dollars ($1,000), made payable to the Clerk of Court within ten (10) days from the date of this Order, not only to compensate the Court for valuable time lost but also to ensure that future submissions by Plaintiffs' counsel comport with the level of quality expected of practitioners, including, but not limited to, compliance with local rules.

## VI.  Briefing Schedule

To the extent the Court allows supplemental or additional briefing, the submitting Party has thirty (30) days from the date of this Order in which to submit their points and authorities.  The opposing Party thereafter has fifteen (15) days in which to file an Opposition, with Replies due eleven (11) days thereafter.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion in Limine (#105) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Judgment on the Record (#106) is DENIED.  Additional briefing and supplementation of the record is allowed as outlined above.

IT IS FURTHER ORDERED that Defendants' Motion in Limine (#107) is GRANTED.

---

[5] *See e.g.*, Local Rules 7-2 (points and authorities), 7-3 (citations, including pinpoints and format), 7-4 (length of briefs), 10-1 (formatting), and 10-3 (exhibits).

AO 72
(Rev. 8/82)

1      IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on

2   Plaintiffs' Sixth and Seventh Claims for Relief (#108) is DENIED.  Additional briefing is allowed

3   on the issue of Defendants' immunity for negligence.

4      IT IS FURTHER ORDERED that Defendants' Motion in Limine (#109) is

5   GRANTED.

6      IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on

7   Plaintiffs' Fourth Claim for Relief (#110) is DENIED.

8      IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on

9   Plaintiffs' Eighth Claim for Relief (#111) is DENIED.

10      IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as

11   to Plaintiffs' Entitlement to Compensatory Damages under Plaintiffs' Second and Third Claims for

12   Relief (#112) is DENIED.

13      IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on

14   Plaintiffs' Fourth and Fifth Claims for relief (#113) is DENIED.

15      IT IS FURTHER ORDERED that Plaintiffs' counsel pay $1,000 to the Clerk of

16   Court within ten (10) days from the date of this Order as sanctions for their noncompliance with

17   local briefing rules.

18

19      Dated:  December 10, 2007.

20

21   _____

22   **ROGER L. HUNT**
     **Chief United States District Judge**

23

24

25

26

AO 72
(Rev. 8/82)